IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

|  |  |
|---|---|
| AMY GWEN DENERO, ) | |
| ) | Civil No. 2013-73 |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| PALM HORIZONS MANAGEMENT, INC. d/b/a ) | |
| CATERED TO VACATION HOMES and ) | |
| J-MACKS PROPERTIES, LLC, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is plaintiff Amy Gwen Denero's motion to disqualify [DE 156] defendants' counsel – the law firm of Quintairos, Prieto, Wood & Boyer, P.A. ("QPWB") – pursuant to Rules 1.9 and 1.10 of the ABA Model Rules of Professional Conduct ("MPRC").[1] The motion to disqualify is predicated on the fact that Matthew Reinhardt, Esq., a former associate at the law firm of plaintiff's counsel – the Law Offices of Karin A. Bentz, P.C. ("LOKAB") – left that firm in December 2014, and has taken a position as an associate at QPWB. Plaintiff argues that Reinhardt's prior representation of plaintiff precludes him from doing any work on this matter on defendants' behalf, and that such prior representation and prohibition also precludes QPWB from continuing as counsel to defendants. Pl's. Mot. Disqualify ("Pls.' Mot.") at 2, 6. Defendants oppose the motion [DE 159].[2] The Court held an evidentiary hearing on the motion on March 2, 2015. For the reasons that follow, this Court DENIES the motion.

---

[1] In the District Court, the MRPC govern the professional responsibilities of practicing attorneys. *See* LRCi 83.2(a)(1); *see also VECC, Inc. v. Bank of Nova Scotia*, 222 F. Supp. 2d 717, 719 (D.V.I. 2002).

[2] Plaintiff filed a reply. [DE 173].

## I. PROCEDURAL & FACTUAL HISTORY[3]

Plaintiff, through LOKAB, filed this action on July 26, 2013. [DE 1]. At all relevant times, Karin A. Bentz, Esq., and associate Gregory Adam Thorpe, Esq. worked on this case, with Attorney Thorpe bearing primary responsibility for the handling thereof. On October 21, 2013, QPWB appeared in the matter on behalf of certain of the defendants, seeking additional time to respond to the complaint. [DE 13]. Both firms have been actively litigating this matter since.

Sometime in March 2014, Reinhardt began employment as an associate at LOKAB. During his employment, he participated in regular meetings of attorneys and staff at which the firm's cases were discussed. These discussions at times included not only logistics, but also matters of strategy, as well as discussions of confidential client matters. While employed at LOKAB, Reinhardt had access to all client files.

Attorney Thorpe testified that he often "use[d] [Reinhardt] as a sounding board" for ideas about this case and others. In November 2014, the LOKAB associates met to parcel out work on Attorney Thorpe's cases, including Denero's case, as he was scheduled to go on vacation. Reinhardt received some assignments to complete, including the drafting of a motion in this case to extend the deadline for filing expert reports.

Reinhardt never communicated directly with Denero on any issue. He disavows any substantive direct involvement with Denero's case or having or recalling any confidential information about her or her case.

In early December 2014, Carl Abraham, an expert witness identified by Denero and plaintiffs in other cases, spent time in the LOKAB offices, working on several cases. Reinhardt had some interaction with Abraham, including attending a dinner with him and other LOKAB

---

[3] The facts recited here were those established at the March 2, 2015.evidentiary hearing or were derived from the Court's docket.

*Denero v. Palm Horizons Mgmt., Inc., et al.*
Case No. 3:13-CV-73
Page 3

employees at which Abraham discussed his opinion in this matter. The son of one of the firm's employees also attended the dinner.

Sometime prior to early December 2014, Reinhardt submitted a cover letter and resume to QPWB's Miami, Florida office for prospective employment. Shortly thereafter, Attorney Ryan Meade, a partner at QPWB in the Virgin Islands office, contacted Reinhardt. During the week of December 9, 2014, Reinhardt met with Meade and other partners in QPWB's Virgin Islands office. Reinhart acknowledged that LOKAB had cases pending against parties represented by QPWB. Reinhardt was instructed not to discuss any of LOKAB's cases with anyone from QPWB, and he was told before being offered a job that he would be "screened" so that any information he might have would not be disclosed to QPWB.

In connection with considering hiring Reinhardt, Meade held internal discussions with QPWB staff members, including IT personnel, about (1) hiring Reinhardt, who was not needed to work on any cases where LOKAB was opposing counsel, and (2) implementing screening measures to avoid Reinhardt's disclosure of LOKAB case information. QPWB's Virgin Islands office is "paperless;" that is, no hard copies of client files are maintained there. All client files are accessed by computer. Access to materials can be denied on a case-by-case basis. Hard copies of client files are kept in the firm's Miami office.

On December 10 or 11, 2014, Meade contacted Reinhardt and made an offer of employment to him. Reinhardt accepted the offer on December 12, 2014, but told QPWB that he had to give LOKAB 30 days' notice before leaving the firm. Reinhardt informed LOKAB on December 12, 2014 that he had accepted QPWB's job offer, and he was asked to leave the firm that day.

Case: 3:13-cv-00073-CVG-RM   Document #: 185   Filed: 03/04/15   Page 4 of 9

Denero v. Palm Horizons Mgmt., Inc., et al.
Case No. 3:13-CV-73
Page 4

Reinhardt started work at QPWB on January 12, 2015.  Prior thereto, Meade worked with QPWB's "back office" to get the appropriate hiring information in place, and to set up Reinhardt's email and on-line access.  Meade set up the computer to be used by Reinhardt and worked with the IT staff to deny access to all QPWB client files, except those on which Reinhardt was to be working.  Reinhardt was not given access to any LOKAB cases.  Meade instructed Reinhardt not to share any information on LOKAB cases with anyone at QPWB, and he instructed those at QPWB not to communicate with Reinhardt about any of those cases.  Reinhardt works in an office at QPWB with a closed door.

Denero filed the instant motion to disqualify on January 12, 2015.  By letter dated January 28, 2015, Attorney Meade formally notified Attorney Bentz, and through her the clients having cases against parties represented by QPWB, that pursuant to Model Rule 1.10:  (1) Reinhardt had become employed at QPWB, (2) Reinhardt was to have no involvement in any matters in which LOKAB was involved, (3) Reinhardt was not to share any information he obtained at LOKAB with anyone at QPWB, (4) no one at QPWB was to communicate with Reinhardt about any such matters, and (4) a screen had been put in place, the details of which were described.  *See* [DE 159-2].

During the hearing on March 2, 2015, plaintiff Denero testified via telephone that she did not waive her objection to a conflict of interest, or consent to allow Reinhardt or QPWB to represent the defendants in this matter going forward.

## II.    STANDARD FOR A MOTION TO DISQUALIFY COUNSEL

"The underlying principle in considering motions to disqualify counsel is safeguarding the integrity of the court proceedings and the purpose of granting such motions is to eliminate the threat that the litigation will be tainted."  *McKenzie Constr. v. St. Croix Storage Corp*., 961 F.

Supp. 857, 859 (D.V.I. 1997). "The district court's power to disqualify an attorney derives from its inherent **authority** to supervise the professional conduct of attorneys appearing before it." *De La Cruz v. V.I. Water & Power Auth,* 2014 U.S. App. LEXIS 24561, *9 (3d Cir. Dec. 30, 2014) (emphasis added) (quoting *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980)). "Courts are required to preserve a balance, delicate though it may be, between an individual's right to his own freely chosen counsel and the need to maintain the highest ethical standards of professional responsibility." *Gordon v. Bechtel Int'l*, 2001 U.S. Dist. LEXIS 22432, at *15 (D.V.I. Dec. 28, 2001).

Even if a court finds that counsel violated the MRPC, however, "disqualification is never automatic." *See Brice v. Hess Oil Virgin Islands Corp.*, 769 F. Supp. 193, 195 (D.V.I. 1990) (quoting *Miller*, 624 F.2d at 1201). Rather, a district court should grant a motion to disqualify counsel "only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule." *Miller*, 624 F.2d at 1201. In making this determination, a court should balance the following factors: (1) the moving litigant's interest in "the continued loyalty of his attorney;" (2) "the opposing litigant's interest in retaining his chosen counsel;" (3) prejudice to the opposing litigant in terms of "time and expense required to familiarize a new attorney with the matter;" and (4) the "policy that attorneys be free to practice without excessive restrictions." *Brice*, 769 F. Supp. at 195; *see also Pepper v. Little Switz. Holdings, Inc.*, 2005 U.S. Dist. LEXIS 14453, *5-6 (D.V.I. Jul. 6, 2005).

"Motions to disqualify are viewed with disfavor and disqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary." *Alexander v. Primerica Holdings, Inc.*, 822 F. Supp. 1099, 1114 (D.N.J. 1993) (internal quotation marks omitted); *accord Prosser v. Nat'l Rural Utils. Coop. Fin. Corp.*, 2009 U.S. Dist.

LEXIS 47744, at *6 (D.V.I. June 8, 2009). "Although doubts are to be resolved in favor of disqualification, the party seeking disqualification must carry a heavy burden and must meet a high standard of proof before a lawyer is disqualified." *Alexander*, 822 F. Supp. at 1114 (internal citations omitted). "Vague and unsupported allegations are not sufficient to meet this standard." *Cohen v. Oasin*, 844 F. Supp. 1065, 1067 (E.D. Pa. 1994); *see also Hamilton v. Dowson Holding Co.*, 2009 U.S. Dist. LEXIS 57715, at *12 (D.V.I. July 2, 2009) (stating "mere allegations of unethical conduct or evidence showing a remote possibility of a violation of the disciplinary rules will not suffice under this standard").

### III.     ANALYSIS

Plaintiff argued at the March 2, 2015 hearing that Reinhardt, and the QPWB firm by extension, should be disqualified because, under MRPC 1.9, "the only way they can continue in this matter is with the consent" of plaintiff. Defendants, on the other hand, argue that Reinhardt will have no future role in this litigation, and that Rule 1.10 provides for screening procedures to protect against the disclosure of any confidences Reinhardt might have obtained, regardless of consent. For the reasons provided below, the Court agrees that QPWB may continue to represent defendants in the absence of plaintiff's consent upon strict compliance with Rule 1.10.

1.     <u>MRPC 1.9</u>

Rule 1.9 governs conflicts of interest that arise because of duties owed to **former** clients. The Rule prohibits an attorney from representing a client with interests adverse to a former client "in the same or a substantially related matter," unless the former client consents.[4]  MRPC 1.9(a).

---

[4]     The paramount concern addressed by Rule 1.9 is that an attorney who may have acquired confidential information about a client not be able to use that information to harm the client after the representation has terminated. As the comments point out, "the client previously represented . . . must be reasonably assured that the principle of loyalty to the client is not compromised[;]" however, "the rule should not unreasonably hamper lawyers from forming new associations." MRPC 1.9, cmt 4; see Javorski v. Nationwide Mut. Ins. Co., 2006 U.S. Dist. LEXIS 81490, at *17 (M.D. Pa. Nov. 6, 2006) (explaining "[t]he purposes of Rule 1.9 are to prevent even the

Accordingly, disqualification under Rule 1.9(a) requires the existence of four factors: (1) an attorney-client relationship existed between the attorney and the former client; (2) the former representation was with respect to the same or a substantially related matter as the present matter; (3) the interests of counsel's current client are materially adverse to the interests of the former client; and (4) the former client has not consented. *See Apeldyn Corp. v. Samsung Electronics, Co., Ltd.*, 660 F. Supp. 2d 557, 561 (D. Del. 2009); *see also Jordan v. Phila. Hous. Auth.*, 337 F. Supp. 2d 666, 672 (E.D. Pa. 2004).

Here, the Rule 1.9(a) factors supporting disqualification are met. First, an attorney-client relationship existed between Reinhardt, via his association with LOKAB, and Denero. Second, this former representation concerned this exact case. Third, Denero's interests are materially adverse to QPWB's current clients. Finally, Denero does not consent to either Reinhardt, or QPWB, continuing in this matter as counsel to defendants.

The Rule further bars a lawyer – whose former firm represented a client – from knowingly representing another person with materially adverse interests in the same or a substantially related matter, if the lawyer obtained confidential information regarding the former firm's client that is material to the matter and the former client does not consent to the representation. MRPC 1.9(b) & cmt. 5 (explaining "[p]aragraph (b) operates to disqualify the lawyer only when the lawyer involved has actual knowledge of [confidential] information"). Here, Reinhardt did not bear primary responsibility for handling Denero's case. Nevertheless, based on the evidence presented, the Court infers that Reinhardt has actual knowledge of protected client information regarding Denero based on Reinhardt's "general access to files of all

---

potential that a former client's confidences may be used against him, to maintain public confidence in the integrity of the bar, and to fulfill a client's rightful expectation of the loyalty of his attorney in the matter for which he is attained [sic]") (citing In re Corn Derivatives, 748 F.2d 157, 162 (3d Cir. 1984)).

[LOKAB] clients" and his "regular[] participat[ion] in [LOKAB] discussions" about client matters.[5]  *Id.*, cmt. 6.

While Rule 1.9 supports disqualification of Reinhardt, this Rule is not determinative of the issue presented – that is, whether QPWB is subject to disqualification.  This determination hinges on Rule 1.10 of the MRPC.

2. MRPC 1.10

Rule 1.10 generally imputes to an attorney's firm – and thus requires disqualification of that firm – any conflict under Rule 1.9 that would disqualify the individual lawyer.  This rule is subject to two exceptions, the second of which is pertinent here.  In particular, the conflict is not imputed to the firm if "the prohibition is based upon Rule 1.9(a) or (b), [] arises out of a disqualified lawyer's association with a prior firm," and (1) appropriate and timely screening measures are put in place, (2) the disqualified attorney derives no fee from the representation, (3) written notice is promptly given to affected former clients and (4) certification of current and future compliance with the applicable Model Rules and the screening procedures are given upon request.  MRPC 1.10(a)(2).

Based on the evidence presented, the Court finds that QPWB invoked adequate and timely screening measures to prevent the disclosure of any of Denero's client confidences, and to prevent disclosure of anything Reinhardt might have learned while at LOKAB from being used against Denero.  Further, Meade testified that Reinhardt would not be allocated any fees QPWB might earn in this case.

---

[5]   Here, LOKAB does not have to show that confidential information actually passed to Reinhardt, or to describe in detail what that information is.  *See Bluebeard's Castle, Inc. v. Delmar Mktg.,* 866 F. Supp. 1204, 1207 (D.V.I. 1995) (Virgin Islands courts "avoid the difficulty of weighing alternative descriptions of past confidential consultations by assuming that confidential information has passed between the attorney and the former client, notwithstanding the attorney's declaration to the contrary.")(internal quotation marks omitted); *see also Yhan v. Hovensa, L.L.C.,* 2012 U.S. Dist. LEXIS 161593, *21 (D.V.I. Nov. 12, 2012).

Also, the firm and Reinhardt certified that there is and would continue to be compliance with the screening measures. The Court disagrees with plaintiff's argument that the January 28, 2015 letter notifying LOKAB clients of the conflict -- sent several weeks after Reinhardt began work at QPWB -- was untimely, or was only generated as an "after the fact" effort to correct prior lack of compliance with Rule 1.10. Based on the record, the Court concludes that the notification and certification letter was timely under the circumstances.

In sum, the Rules permit the use of appropriate screening to negate the need for disqualification,[6] even in the absence of consent by the former client. Accordingly, based on the circumstances presented here, the Court concludes that plaintiff has failed to meet her burden in demonstrating that disqualification is required pursuant to Rule 1.9 and Rule 1.10 of the MRPC.

## IV. CONCLUSION

For the foregoing reasons, it is HEREBY ORDERED that plaintiff's motion to disqualify counsel [DE 156] is DENIED.


**Dated:** March 4, 2015                    S\_____
                                            **RUTH MILLER**
                                            United States Magistrate Judge

---

[6] Plaintiff urges the Court to consider the transcript of a "hearing in the Superior Court of the Virgin Islands, in Rogers v. UVI ST-13-CV-125, where Judge Christian considered a motion to disqualify under Virgin Islands Supreme Court Rules 211.1.9 and 211.1.10, which contain the same language as Model Rules of Professional Conduct 1.9 and 1.10." In that case, the QPWB firm was disqualified. Pltf's Supp. Mem. [DE 179], and Ex. 1. Plaintiff is incorrect that such circumstances are analogous to the present ones, however, because Supreme Court Rule 211.1.10 – in contrast to MRPC 1.10 -- does not contain a provision for screening a lawyer who transfers from one firm to another.